KINGSLAND vs. BETTS and others.

Whether a sum directed by a will to be raised out of the rents and profits of real estate is to be raised by annual rents and profits or by sale or mortgage, is a question of intention, to be collected from the context of the will and from the purposes to which the money is to be applied.

Therefore, where a testator gave to his wife all his real and personal estate, as long as she remained his widow, for the faithful bringing up and support of his children ; but, in case of her marriage, gave her £20 a year for life in lieu of her dower; and gave the full possession of the real estate to his son in fee at twenty-one, but subject to the remarriage or death of such widow and also to legacies of five hundred dollars each to the testator's daughters : IT WAS HELD, that maintenance to the children must come out of the annual rents and profits so long as the widow remained unmarried ; and that she could not raise the maintenance by sale or mortgage of the fee. And also, as a consequence, that the daughters who claimed arrears of maintenance were not entitled to have the same satisfied out of a sale.

April 16,
1833.

Will.
Words of in-
vention.

Thomas Betts, the elder, at the time of his death, was seized of lands and other real estate in the counties of Kings and Queens ; and by his will, dated the twentieth day of February one thousand eight hundred and seventeen, he bequeathed and devised his property as follows: "Item. It is my will and I " do give and bequeath to my wife Elizabeth, all my estate, " both real and personal, as long as she shall remain my widow, " for the faithful bringing up and support of my children. " But, in case she should remarry, then I give and bequeath un- " to her twenty pounds per year during her life, in lieu of her " dower right, to be paid her yearly by my son Thomas out of " my real estate. And I do direct my executors hereinafter " named to see that it be faithfully performed. Item. It is my " will and I do give and bequeath unto my son Thomas, all my

" real estate lying in the counties of Kings and Queens what-
" soever and wheresoever it may be, that is, to have it in full
" possession after the death or remarriage of my wife Eliza-
" beth, or if she should die or remarry, then when he shall ar-
" rive to the age of twenty-one years of age ; and, provided he
" supports and brings up my five daughters until they arrive
" to the age of twenty-one years to him and his heirs and as-
" signs for ever. Provided further, that my son Thomas pays
" to each of my daughters, namely, Elizabeth, Cornelia, Nancy,
" Susannah and Sally each five hundred dollars out of my
" real estate as they respectively arrive to the age of twenty-
" one years. And I do direct my executors to see that it is
" faithfully performed. *Item.* It is my will and I do direct
" my executors and my son Thomas that, notwithstanding
" my gifts and bequests of my real estate, my brother Richard
" Betts shall remain and live on the old farm where he now
" lives during his natural life, and to have the care of my
" mother and sisters in the same manner as they now live ; but
" after the death of my brother Richard, my son Thomas to
" have full possession of the farm."

The testator's widow Elizabeth and son Thomas joined in
mortgaging whatever right, interest and estate they had 'in the
lands devised by virtue of the will to the complainants. Out of
the money thus raised, the legacies to two of the daughters
were paid. The balance of it, as well as some of the rents (as
will be observed in the opinion of the court) went to make
permanent improvements upon the mortgaged property. They
also gave three subsequent mortgages to the defendant John
R. Snediker ; one of them had been assigned to and was held
by the defendants George Van Nuyse and Jeromus Van
Nuyse, and another to one Deckir.

The complainant's now filed their bill for foreclosure and sale.

Three of the daughters of the testator were parties to the
suit, by reason of their legacies of five hundred dollars each,
charged on the real estate and being unpaid when the bill was
put on file. But they had all since attained full age ; and the
legacies had been paid out of the proceeds of a part of the pro-

1833.

KINGSLAND
*v.*
BETTS.

**1833.**

**KINGSLAND**
**v.**
**BETTS.**

perty known as the Homestead estate sold under an order or decree made in this cause. With respect to the legacies, therefore, no question existed : but, these daughters claimed to charge the real estate with arrears of maintenance which they had not received out of the estate for two, three or four years anterior to their attaining the age of twenty-one years respectively.

An account of these arrears had been taken by a master; and he reported the same, with an opinion, that the maintenance for the daughters during their minority, as well as the legacies, was a charge upon the real estate, and also, that such arrears were entitled to priority of payment as between them and the mortgagees. Both the complainant and the defendants excepted to this part of the master's report; and the daughters also excepted to it, so far as regarded the principal and interest reported to be due upon one of the mortgages given to Snediker, being a mortgage dated the nineteenth day of April one thousand eight hundred and twenty-six for six hundred dollars, and insisted upon the same not being a valid or subsisting mortgage—at any rate, nor for the amount which was specified on the face of it.

The questions to be now decided by the court were, as to the priority of the claim for maintenance ; and, the validity of the last mentioned mortgage held by Snediker.

Mr. *R. Bogardus*, for the complainant.

Mr. *W. S. Johnson*, for the defendants.

*July 8.*        The VICE-CHANCELLOR. It is very clear that the whole estate of the testator Thomas Betts, the elder, is devised, in the first instance, to his wife Elizabeth during her widowhood for her own benefit and, in trust, for the education and maintenance of her children during their minorities. But in case of her marriage before they all attain the age of twenty-one years, the trust would devolve upon Thomas the son—since, in such an event, his estate now in remainder would vest in possession ;

and in that case also, the widow's annuity of twenty pounds in lieu of dower would commence, provided she elected to take it. And whether the mother married again or remained a widow, the daughters, as they respectively arrived at the age of twenty-one were each to receive a legacy of five hundred dollars. These different provisions, namely, maintenance during minority, the legacies to the daughters when of age, and the annuity to the widow in the event of her marriage, are so many distinct charges upon and to be satisfied in some way out of the real estate. Whenever Thomas shall come into possession, by the determination of the particular estate, he will also become personally responsible in law for the payment of these demands.

The time has not arrived for the estate to vest in Thomas in possession. The particular estate devised to his mother has not expired. Still, there is no doubt of the daughter's rights as they successively come of age to have satisfaction of their legacies out of the real estate; and this too, by sale, if necessary : *Schermerhorn* v. *Schermerhorn*, 6. *J. C. R.* 70. If a sale could be enforced, then, *a fortiori*, a mortgage for the purpose of raising the money would have been justifiable and proper. This consequence results, as to the legacies or portions for the daughters, from the will expressly directing them to be paid out of the real estate : thereby creating a charge upon the land itself and not restricting its operation to the rents or income. There is a manifest distinction here between the charge for maintenance during minority and the portions to daughters when of age. Maintenance, as given by the will, is indefinite as to amount and is not payable at any fixed and certain periods, but is to go on accruing as long as the children remain under age. The annual rents, profits and income of the estate are peculiarly and appropriately the source from which it is to be derived and to which it ought to be confined : unless there is something in the will to show a more liberal intention in the testator than the income could afford. Besides, maintenance is made to spring from the trust created, in the first instance, by the devise of the whole estate to the mother

during her widowhood; and to depend upon the use which she could lawfully make of the property and of her right and control over it. What use or benefit could she derive from the estate, except in the way of rents or income, without violating her trust? A sale or mortgage by her of such estate or interest as she had in the lands for her own exclusive use would have been a violation; and, if made to raise money for the purpose of defraying the expenses of her children's support, it could not have been extended to the fee of the land. But she made no such sale or mortgage, nor does it appear but what the rents were abundantly sufficient to defray such expenses.

The right of the children to maintenance has ceased by all of them having arrived at age, the trust is at an end, although her estate continues by remaining a widow; and whatever claims these three daughters may have on the score of maintenance withheld for three or four years of their minority, it appears to me they are claims which must be made against her personally for income received and not applied to their use, in breach of her trust: and that such claims cannot now be allowed as charges upon the fee of the lands to the prejudice of the remainder man or the mortgage creditors. All the cases to which I have been referred of trust terms for raising portions and for maintenance, where the court has sanctioned the giving of mortgages or the sale of the reversion for these purposes, are very different from the present. Generally and almost invariably in those which I have met with, the maintenance directed to be raised, was of a certain and specified amount and the deed or will creating the trust authorized, by express words or by necessary implication, the raising of money by sale or mortgage of the reversionary estate : *Pierpont* v. *Lord Cheney*, 1 *P. Wms.* 488 ; *Ravenhill* v. *Dansey*, 2 *Ib.* 180 ; *Hall* v. *Carter*, 2 *Atk.* 354 ; *Allan* v. *Backhouse*, 2 *V. & B.* 65 ; and *Schermerhorn* v. *Schermerhorn*, before cited.

And see *Evlyn* v. *Evlyn*, 2 *P. Wms.* 659, where the court refused to raise portions for daughters (no maintenance being given) by a mortgage of the reversion. But the case of *Wilson* v. *Halliley*, 1 *R.* and *M.* 590. has a stronger bearing, by

analogy to the present one. There a testator directed the trustees to raise by and out of the rents and profits of his real estate, a large sum and apportion it between different legatees; and the question was, whether the direction to raise the amount out of the rents and profits meant the annual rents and profits or extended so far as to authorize the raising of the money by sale or mortgage. The M. R. stated this to be a mere question of intention, to be collected from the context of the will or from the purposes to which the money was to be applied. If (he observed) those purposes require the immediate payment of the money, then, it must be intended the testator could not mean satisfaction by annual rents and profits, but by sale or mortgage. By this rule he examined the case; and having ascertained from the will that the object and purposes to which the money was to be applied did not require the immediate payment of the whole sum, he decreed satisfaction of the trust out of the annual rents and profits and not by sale or mortgage. The like mode of considering the subject may be adopted and the same rule, with great propriety, be applied to this case.

I am of opinion the maintenance in question was given out of the annual rents and profits of the estate devised to the mother, so long as she remained a widow; and that the charge for maintenance does not extend beyond the trust thereby created—until the estate should vest in possession in Thomas, during the minority of the daughters. Also, that the mother, as such devisee or trustee, was not authorized to break in upon the capital of the estate for the purposes of maintenance, by sale or mortgage of the fee; and, consequently, that the arrears claimed for the daughters ought not to be satisfied out of the sales of the land.

I observe, however, from the master's report, that from November one thousand eight hundred and twenty four, when the complainant's mortgage was given, to the month of November one thousand eight hundred and twenty eight, the complainant received the whole of the rents, and, after deducting the interest money payable to him and the expences of keeping the buildings insured, paid over the residue thereof to the wi-

dow, Elizabeth Betts.   Thus, a considerable portion of the rents which ought to have been applied to the use of her daughters, were, during this space of time, applied to the keeping down of the interest upon the bond and mortgage ; and as the money raised by this mortgage went to pay two of the daughters legacies which were chargeable upon and payable out of the capital of the estate, as well as the expense of erecting new or additional buildings, constituting permanent improvements, the rents or income, to which the daughters were entitled, ought not to have been thus prejudicially applied.   Neither, on the other hand, ought they to derive the benefit of encreased rents by means of such improvements, without allowing interest upon their cost, which, amounting to three thousand dollars, would make this interest two hundred and ten dollars ; while, adding the expense of insurance, the amount is nearly two hundred and fifty dollars *per annum ;* and this is stated to be about the amount of encrease in the annual rent.   I think, therefore, the interest on that portion of the mortgage debt and the additional rent they obtained may be considered as balanced.

With respect to the two legacies, amounting to one thousand dollars, paid out of the money raised on mortgage, the interest on which ( being seventy dollars a year ) has been taken out of the rents and credited on the complainant's mortgage : I shall direct that amount to be allowed and repaid for the benefit of the daughters out of the proceeds of the sale of the mortgaged premises, in preference to the claim of the complainant and the other mortgagees.   I think this meets the justice and equity of the case as between the daughters and the mortgagees.

Next, as to the mortgage of Snediker, dated the nineteenth day of April one thousand eight hundred and twenty six, for six hundred dollars, (and which forms the subject of one of the exceptions).   The consideration for this mortgage and the circumstances under which it was given have been enquired into ; and the facts are set forth in the master's report.   There was, doubtless, ample inducement for making the agreement with Snediker ; and a sufficient consideration in it for this mortgage,

although such consideration appears, to a certain extent, to have failed : in their not selling the property as contemplated. But this occurred without the fault of Snediker ; and although he was never required to give up the posession as lessee, yet he was always ready to make the surrender and was permitted to hold the bond and mortgage without objection. Even when the new lease was given for one year and accepted by him (instead of the then remaining two years of the original term) it does not appear he was required to relinquish the bond and mortgage or any part of the sum thereby secured to be paid to him. What the agreement embraced or what passed between the parties at the time, is not fully or clearly explained. Still, the fact of the bond and mortgage being suffered to remain in his hands uncancelled and no endorsement of payment or reduction made upon them, raises a strong presumption that they were to stand as subsisting securities for the whole amount. At all events, it rested with the other side to show the contrary : which they have not done. No fraud or concealment is proved ; and upon the testimony reported by the master, I do not well see how any other conclusion can be formed. His report, allowing the principal and interest of this bond and mortgage, must be confirmed.

The parties are entitled to their costs of this suit, in the order of their respective priorities, out of the estate.